UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANDIE ANN FERGUSON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | Case No. 4:16-cv-05995-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 20, 21 |

Plaintiff Mandie Ann Ferguson seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

## I. BACKGROUND

On October 29, 2012, Plaintiff Mandie Ann Ferguson filed concurrent applications for Title II Disability Insurance ("DI") Benefits and Title XVI Supplemental Security Income ("SSI") Benefits. Administrative Record ("AR") 12, 185-97. Plaintiff's applications allege a disability onset date of March 14, 2012. AR 185, 211. Plaintiff's claims were initially denied on May 9, 2013, and Plaintiff's Request for Reconsideration was denied on November 6, 2013. AR 12, 128-29, 137. A hearing was held before Administrative Law Judge Maxine R. Benmour on October 29, 2014. AR 12-22.

Plaintiff is thirty-one years old and lives with her mother. AR 16, 45. Plaintiff has not

been engaged in substantial gainful activity since May 14, 2012. AR 211.

Plaintiff received treatment for mental impairments, primarily anxiety and panic disorder. AR 319, 328. Plaintiff was treated by Alex W-H Liao, MD, Ph.D, who, in May 2012, assigned her a Global Assessment of Functioning ("GAF") score of 55, indicating that she experienced moderate limitations. AR 308-13. In August 2012, Dr. Liao opined that Plaintiff could not return to work due to panic attacks and that he would extend her short-term disability insurance, and assigned her a GAF of 51 (moderate limitations). AR 304, 307.

Other than two brief hospitalizations—four days in June 2013 and one day in January 2014— Plaintiff's mental status examinations were generally unremarkable. *See* AR 342, 457-58, 552-53, 608. For example, in July 2013, shortly after her first hospitalization, examining psychologist, Adeline Boye, Ph.D., observed that Plaintiff had a tearful and anxious mood, but pleasant and cooperative demeanor, intact recent and remote memory, a logical thought process, goal-directed thought content, normal attention and concentration, and fair insight and judgment. AR 552. Dr. Boye assessed Plaintiff with a GAF of 51-60, indicating only moderate symptoms. AR 552-53. When Plaintiff presented for mental health treatment in February 2014, subsequent to her second hospitalization, treating physician Jen-Hsiung Wang, M.D., similarly reported normal findings, including that Plaintiff had a cooperative attitude, appropriate affect, intact memory, logical thought process, and her attention was gained. AR 457. Dr. Wang assessed Plaintiff with a GAF of 80, indicating transient and normal reactions to stressful situations. AR 458. On April 25, 2014, Dr. Wang assigned Plaintiff a GAF of 62, indicating mild symptoms. AR 449.

In February 2014, Plaintiff's treating physician Amelia Valdez, M.D., completed a medical source statement where she opined that Plaintiff had an "unlimited" ability to understand, remember, and carry out simple instructions; a "good" ability for complex instructions and maintaining concentration, persistence, and pace; and a "fair" ability to perform activities within a schedule and maintain regular attendance, complete a normal workday and workweek, and respond appropriately to changes in a work setting. AR 318.

In April 2013, consultative examiner Alex Kettner, Psy.D., examined Plaintiff at the request of the Disability Determination Service. AR 335-38. Plaintiff reported that she was not

currently taking medication or receiving mental health treatment. AR 335. Dr. Kettner found that Plaintiff had a mildly depressed mood, but maintained good eye contact, cooperated, and appeared to have intact insight and judgment. AR 336. Upon psychological testing, Dr. Kettner opined that Plaintiff's verbal and memory scores were within the average range. AR 336. Dr. Kettner assessed Plaintiff with a GAF of 60, indicating only moderate symptoms. AR 337. Dr. Kettner concluded that Plaintiff had only mild anxiety and depression, and no gross impairment in cognitive functioning. AR 337. Dr. Kettner assessed Plaintiff with "no" impairment in the ability to follow and remember simple instructions, and a "mild" impairment in all other areas, including the ability to maintain adequate persistence or pace, maintain adequate concentration and attention, adapt to changes in job routine, and interact appropriately with supervisors, co-workers, and the public. AR 337-38.

In May 2013, State agency psychiatrist L. Colsky, M.D., reviewed the record and opined that Plaintiff could perform simple, repetitive tasks and maintain socially appropriate behavior with supervisors and coworkers, but might have difficulty with public interaction. AR 75-76. In September 2013, State agency psychologist Helen Patterson, Ph.D., essentially agreed with Dr. Colsky's opinion, except she concluded that Plaintiff could respond appropriately to the general public. AR 106-07.

In August 2014, Susan Skolek, Psy.D., completed a medical source statement, indicating that she had only treated Plaintiff seven times in the past three months. AR 422. Dr. Skolek opined that Plaintiff had a GAF of 41 and disabling work-related mental limitations, but provided no treatment notes to support her assessment. AR 422-26.

In an April 9, 2015 decision, the ALJ found that Plaintiff was not disabled. AR 12-22. On June 3, 2015, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 6-8. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on August 16, 2016. AR 1-4. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

On February 28, 2017, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt. No. 20.). On March 28, 2017, Defendant filed its opposition and cross-motion for

3

summary judgment. (Def.'s Opp'n, Dkt. No. 21.) Plaintiff did not file a reply, so the motions are fully briefed.

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can

perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. AR 14. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since March 14, 2012, the alleged onset date. AR 14. At step two, the ALJ found that Plaintiff had the following severe impairments: obsessive-compulsive disorder ("OCD"), panic disorder with agoraphobia, Asperger's disorder, and bipolar disorder. AR 14. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 15. Before considering step four, the ALJ determined that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: limited to simple, repetitive tasks with occasional contact with the public. AR 17. At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. AR 20. Lastly, at step five, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and so she was not disabled for the purpose of the Social Security Act. AR 20-21.

### IV. DISCUSSION

Plaintiff makes a single argument in her motion for summary judgment: that the ALJ rejected Dr. Skolek's opinion without providing specific and legitimate reasons supported by medical evidence. (Pl.'s Mot. at 5, 10.)

The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Where the record contains conflicting medical evidence, the ALJ must make a credibility determination and resolve the conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence...." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citations omitted).

Plaintiff contends that the ALJ discounted Susan Skolek, Psy.D.'s treating opinion without providing specific reasons supported by substantial evidence in the record. (Pl.'s Mot. at 5, 9-10.) In opposition, Defendant argues that "the ALJ properly found that Dr. Skolek's three month-long treatment of Plaintiff was not long enough to give the doctor the benefit of a longitudinal picture of Plaintiff's impairments (AR 19)." (Def.'s Opp'n at 4.) The Court notes that the ALJ does not generally dispute Dr. Skolek's diagnoses of Plaintiff's conditions. Rather, the ALJ disagrees with Dr. Skolek's opinion that Plaintiff's mental residual functional capacity is so limited that she would be absent more than three days per month, as well as the validity of the assigned GAF score of 41. AR 19.

The ALJ specifically stated that she afforded limited weight to Dr. Skolek's mental residual functional capacity questionnaire, because "she had seen claimant for only a total of seven visits at the time she completed the form," and that the "[t]reatment notes do not support a GAF of 41 [] or that claimant would be absent from work more than three times per month." AR 19, 422-26. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). Indeed, the ALJ gave Dr. Skolek's opinion limited weight, because she failed to establish a basis for her opinion and provided no treatment notes. Not only did Dr. Skolek fail to cite to any of her specific treatment notes, the administrative record appears to be conspicuously devoid of any

6

treatment notes from Dr. Skolek, and Plaintiff does not cite to any. Moreover, Dr. Skolek first treated Plaintiff on March 21, 2014, and saw her seven times between that date and August 28, 2014, the date Dr. Skolek filled out the questionnaire. AR 422. During that time period, Dr. Skolek stated that both her current and highest GAF scores were 41. *Id.* Plaintiff's treating physician Dr. Wang, however, also saw Plaintiff with some regularity while she was seeking treatment from Dr. Skolek, and assigned Plaintiff a GAF of 62 on April 25, 2014. AR 449. Furthermore, Dr. Skolek does not provide any medical evidence to support her position that Plaintiff would be absent from work more than three times per month.AR 19. This level of severity is contradicted by Plaintiff's treating source Dr. Liao, who, on May 3, 2012, reported that Plaintiff's mental status examination was within normal limits, and assigned a GAF of 55, indicating that she experienced only moderate limitations. AR 312-13. Thus, the ALJ's finding that Dr. Skolek's opinion regarding Plaintiff's limitations was inconsistent with the overall treatment records was based on a reasonable interpretation of the record. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.")

Plaintiff further argues that the ALJ erred in discounting Dr. Skolek's opinion on the grounds that she only saw Plaintiff on seven visits prior to completing the form. (Pl.'s Mot. at 8.) Instead, Plaintiff contends that this directly contradicts the fact that the ALJ adopted the State agency physician's opinion, who never examined Plaintiff and did not have the benefit of reviewing medical records after April 2013. *Id.* at 8-9. While it is true that the ALJ appears to have given greater weight to Dr. Colsky, the non-examining physician, the ALJ did so because the opinion was supported by objective medical evidence. AR 18. Indeed, the ALJ clearly explained how the statements from Plaintiff's treating physicians supported Dr. Colsky's opinion. *Id.* Regardless, there is also no indication that Dr. Skolek had the benefit of reviewing any medical records in connection with her opinion regarding Plaintiff's mental RFC, as she did not cite to any such evidence in support of her opinion regarding Plaintiff's mental residual functional capacity. *See* AR 422-426.

Accordingly, the ALJ had sufficient evidence to give limited weight to Dr. Skolek's

opinion, because it was not supported by any treatment notes or other substantial medical evidence in the record.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED, Defendant's cross-motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: March 12, 2018

KANDIS A. WESTMORE
United States Magistrate Judge